1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                 **FOR THE DISTRICT OF ARIZONA**

8

9    Holly Beth Jones,                    No. CV-22-08102-PCT-DLR

10                Plaintiff,              **AMENDED ORDER[1]**

11   v.

12   Flagstaff Unified School District, et al.,

13                Defendants.

14

15        At issue is Defendant Flagstaff Unified School District's ("the District") motion for

16   summary judgment (Doc. 209), which is fully briefed (Docs. 261, 262).[2] As explained

17   _____

18        [1] This order amends the order issued by the Court on March 31, 2025 (Doc. 269) to
     correct a misstatement on page 17 of the original order. Specifically, on page 17, lines 15–
19   16, the original order states "Although there is a question of fact as to whether Ms. Jones
     was terminated because of behavior attributable to her ADHD . . .". But the Court did not
20   find a genuine question of fact on that point (*see* Doc. 269 at 15). This amended order
     corrects the misstatement.
21        [2] Plaintiff Holly Jones' motion for leave to file a sur-reply (Doc. 266) is denied.
     "Neither Fed. R. Civ. P. 7 nor the local rules of practice for this District provide for the
22   filing of a sur-reply, and sur-replies are not authorized by any other rules of procedure
     absent express prior leave of the Court." *Briggs v. Montgomery*, No. CV-18-02684-PHX-
23   EJM, 2019 WL 13039282, at *2 (D. Ariz. Mar. 19, 2019). Sur-replies are generally
     discouraged and only permitted in extraordinary circumstances, such as when a moving
24   party raises new issues or new evidence for the first time in a reply brief. *Id.* No such
     circumstances exist here. Ms. Jones seeks permission to file a sur-reply addressing the
25   District's arguments against her retaliation claim and raising objections to some of the
     District's evidence. (*See* Doc. 267.) But the District did not raise these arguments or present
26   this evidence for the first time in its reply brief. It raised its arguments against Ms. Jones'
     retaliation claim in its summary judgment motion (Doc. 209 at 16–17) and presented all its
27   evidence with that motion (Docs. 209-1–209-8). Ms. Jones had an opportunity to respond
     to those arguments and that evidence when she filed her response brief. Her proposed sur-
28   reply is an "effort by the nonmoving party to have the last word on a matter," which is
     impermissible. *Briggs*, 2019 WL 13039282, at *2 (internal quotations and citation
     omitted).

below, the District's motion is granted.[3]

## I.    Background

Plaintiff Holly Jones' First Amended Complaint ("FAC") initially asserted claims against the District and two District employees, Tari Popham and Audra Gibson. (Doc. 11.) Ms. Jones accused the District of disability-based discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and the Rehabilitation Act, 29 U.S.C. § 794, and of retaliating against her for engaging in activity protected by those acts (namely, requesting accommodations). (*Id.* at 17–18.) She accused Ms. Popham and Ms. Gibson of intentionally inflicting emotional distress upon her, and of battery. (*Id.* at 19.) On September 20, 2022, however, Ms. Jones voluntarily dismissed her claims against Ms. Popham and Ms. Gibson. (Doc. 20.) Accordingly, the only claims remaining in this lawsuit are the discrimination and retaliation claims against the District. The Court emphasizes this point because much of Ms. Jones' brief in opposition to the District's summary judgment motion focuses on allegations that she was sexually assaulted by Ms. Popham and Ms. Gibson following a night of drinking in September 2020, and the emotional distress that caused her. (*See* Doc. 261 at 1–5.) The District, Ms. Popham, and Ms. Gibson have a different account of what occurred that night. (*See* Doc. 209 at 1–2.) But the Court, in this order, does not wade into whether Ms. Jones' recollection of that night is right or wrong. Those disputes might have been relevant to the tort claims Ms. Jones initially brought against Ms. Popham and Ms. Gibson, but those tort claims are no longer part of this case. This order focuses solely on Ms. Jones' claims that the District discriminated against her because of her alleged disabilities, and that the District retaliated against her for requesting disability-related accommodations.

### A. Events Leading Up to Ms. Jones' Termination

As noted, Ms. Jones and some District colleagues, including Ms. Popham and Ms. Gibson, met for drinks after work in September 2020. (Docs. 209-2 at 53–54; 261-1 at 11.)

---

[3] The District's request for oral argument is denied because the parties had an adequate opportunity to brief the issues, and oral argument will not help the Court resolve the motion. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f); *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 728–29 (9th Cir. 1991).

1  Though all agree that Ms. Jones drank to the point of intoxication that night, they disagree
2  over precisely what happened. Ms. Jones contends that she was sexually assaulted by Ms.
3  Popham and Ms. Gibson; Ms. Popham and Ms. Gibson deny those allegations. This dispute
4  is not material. Whatever transpired that night caused Ms. Jones distress, and she began to
5  excessively call, text, and email Ms. Gibson and Ms. Popham, despite their requests that
6  Ms. Jones stop. (Docs. 209-2 at 128, 132–191, 193–199; 209-3 at 2–34.)

7  Ms. Jones was directed not to have any non-school contact with Ms. Popham or Ms.
8  Gibson, but she violated those orders. (Docs. 209-2 at 30–31, 36–37; 209-3 at 34, 36, 44,
9  46–49, 54–55.) In response, the District engaged outside counsel to conduct an
10  investigation. (Docs. 209-2 at 6–7; 209-3 at 54.) The investigator concluded that Ms. Jones
11  had engaged in bullying and unprofessional conduct. (Docs. 209-2 at 12–13, 38–39, 99;
12  209-4 at 5–34, 36.) As a result, the District disciplined Ms. Jones by suspending her for
13  five days without pay. (Doc. 209-4 at 42, 48.)

14  In response to this disciplinary action, Ms. Jones began to excessively email
15  Superintendent Michael Penca, generally criticizing the disciplinary action and attempting
16  to negotiate a different resolution. (Docs. 209-4 at 50–51, 53–54; 209-5 at 2–5, 7, 9.) Mr.
17  Penca advised Ms. Jones that the disciplinary issue was closed, directed her to "discontinue
18  these communications," and warned that "further acts of insubordination may result in
19  disciplinary action, up to an including termination." (Doc. 209-5 at 11.) Ms. Jones
20  disregarded this directive and continued her onslaught of emails to Mr. Penca. (Doc. 209-
21  5 at 13–14, 16–17, 19, 23, 25–26, 31–33, 35.) Mr. Penca again explained to Ms. Jones that
22  the disciplinary decision was final, expressed concerns that she was continuing her pattern
23  of insubordinate behavior, and advised her to "move forward and focus on" the upcoming
24  school year. (*Id.* at 37.) But Ms. Jones would not move on. Instead, she resumed her
25  excessive email communications. (*Id.* at 40, 43, 45, 48, 50, 52, 54–55, 58–59.)

26  Mr. Penca determined that Ms. Jones' behavior merited dismissal under various
27  District policies governing employee conduct, and on July 8, 2021, notified Ms. Jones of
28  his intent to recommend her dismissal to the District's Governing Board. (Doc 209-6 at 2–

1    31.) On July 12, 2021, Mr. Penca formally submitted a Statement of Charges to the

2    Governing Board, detailing the grounds he believed justified Ms. Jones' dismissal. (*Id.* at

3    33–42.) The following day, the Governing Board adopted the charges and issued a written

4    notice of its intent to dismiss Ms. Jones from her employment. (*Id.* at 44–45.)

5         Ms. Jones exercised her right to a due process hearing, during which she was

6    represented by counsel, testified, and cross-examined witnesses. (Doc. 209-2 at 117–19.)

7    Following the due process hearing, the independent hearing officer concluded that Ms.

8    Jones had engaged in "verbal abuse," "bullying," "unprofessional conduct,"

9    "insubordination," and "conduct which would discredit the teaching profession," in breach

10   of her teaching contract, and recommended the Governing Board affirm its dismissal. (Doc.

11   209-7 at 13–17.) The Governing Board did so on September 21, 2021, terminating Ms.

12   Jones' employment. (*Id.* at 20.)

13        **B. Ms. Jones' Request for Disability-Related Accommodations**

14        On April 26, 2021—near the end of the 2020–2021 school year and around the same

15   time Ms. Jones was being investigated for her conduct vis-à-vis Ms. Gibson and Ms.

16   Popham—Ms. Jones submitted a request for accommodations for her Attention-

17   Deficit/Hyperactivity Disorder ("ADHD"). Specifically, Ms. Jones requested: "same

18   position, no change in curriculum, support from administration," and "help [with]

19   technology." (Doc. 261-1 at 107.) One of her medical providers likewise identified "keep

20   a routine," and "when possible, limit screen time" as potential accommodations in an ADA

21   Accommodation Form submitted on Ms. Jones' behalf. (*Id.* at 103.) The District responded

22   by engaging in the interactive process and offering accommodations for the upcoming

23   2021–2022 school year, including providing Ms. Jones as much notice as practicable of

24   any changes to her work schedule or school assignments, and assigning a mentor to assist

25   her with technology. (*Id.* at 115–125; Docs. 209-2 at 12, 102; 209-3 at 100; 209-4 at 2–3;

26   209-7 at 44, 46, 55, 57, 63–65, 67, 72; 209-8 at 2, 8, 15–20, 48.) Ms. Jones was terminated

27   for her misconduct, however, before these accommodations could be put into place.

28

## II.    Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248. Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

## III.    Analysis

### A. Disability-Based Discrimination

"The ADA prohibits an employer from discriminating against a qualified individual with a disability 'because of the disability.'" *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999) (quoting 42 U.S.C. § 12112(a)). Likewise, the Rehabilitation Act prohibits any program or activity receiving federal funding from discriminating against a qualified individual with a disability because of her disability. 29 U.S.C. § 794(a). There are no differences material to this case between the rights and obligations created by the ADA and the Rehabilitation Act. *See Csutoras v. Paradise High School*, 12 F.4th 960, 969 n.11 (9th Cir. 2021). Accordingly, the Court addresses these claims together, and for ease

will discuss these claims using language and authority from the ADA context because "the standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the" ADA. *See Coons v. Sec. of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004).

To prove a claim of disability discrimination, a plaintiff must show that (1) she is disabled within the meaning of the law, (2) she is qualified, with or without an accommodation, to perform the essential functions of the job, and (3) her employer denied a reasonable accommodation for her disability or subjected her to an adverse employment decision because of her disability. *Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270–71 (9th Cir. 1996). Ms. Jones' disability discrimination claim takes three forms. She claims the District (1) failed to accommodate her disability, (2) terminated her because of her disability, and (3) subjected her to a hostile work environment because of her disability. (Doc. 11 ¶¶ 9, 38, 51.)

### 1. Disability

As a threshold matter, the District argues that Ms. Jones' claims fail because she has not proffered sufficient evidence that she was "disabled" within the meaning of the law. (Doc. 209 at 6.) The ADA defines "disability" in three ways.[4] First, an individual can be disabled if she has "a physical or mental impairment that substantially limits one or more major life activities[.]" 42 U.S.C. § 12101(1)(A). This is referred to as the "actual disability prong[.]" *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 436 (9th Cir. 2018). Second, an individual can be disabled if she has "a record of such an impairment." 42 U.S.C. § 12101(1)(B). "An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). Third, an individual can be disabled if she is "regarded as having such an impairment[.]" 42 U.S.C. § 12102(1)(C). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under

---

[4] The Rehabilitation Act materially borrows the ADA's definition. *See* 29 U.S.C. § 705(9), (20).

this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12101(3)(A).

The District and the Court understand Ms. Jones to be proceeding under the "actual disability" prong. Ms. Jones' FAC—filed when Ms. Jones was represented by counsel—claims that Ms. Jones is a person with a disability because she has ADHD "which disability impaired her abilities to work and concentrate which needed reasonable accommodations," and because she identifies as "A-sexual, which impaired her essential functions of reproduction and intimate sexual interpersonal relationships[.]" (Doc. 11 ¶ 5(D).) Were Ms. Jones relying on the "regarded as" prong of the disability definition, there would have been no need to allege that her ADHD and asexuality impair certain life activities because "[w]hether an individual's impairment 'substantially limits' a major life activity is not relevant to coverage under" the "regarded as" prong. 29 C.F.R. § 1630.2(j)(2). What's more, neither the FAC nor the parties' Joint Proposed Discovery Plan—which includes a summary of Ms. Jones' claims and was prepared when Ms. Jones was represented by counsel—refers to the "record of" or "regarded as" prongs of the disability definition. (*See generally* Doc. 11; Doc. 26 at 2–3.) And Ms. Jones makes no argument under the "record of" or "regarded as" prongs in her response in opposition to the District's summary judgment motion. (*See* Doc. 261 at 7–8.) The Court therefore limits its threshold analysis to the "actual disability" prong.

As previously noted, an individual is actually disabled within the meaning of the law if she has a "a physical or mental impairment that substantially limits one or more major life activities[.]" 42 U.S.C. § 12101(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability[.]" 29 C.F.R. §

1630.2(j)(1)(ii).[5] "The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 'Substantially limits' is not meant to be a demanding standard." *Id.* § 1630.2(j)(1)(i). "The determination of whether an impairment substantially limits a major life activity requires an individualized assessment." *Id.* § 1630.2(j)(1)(iv). "[I]n deciding whether the impairment is substantially limiting, courts must consider the nature and severity of the plaintiff's impairment, the duration or expected duration of the impairment, as well as the permanent or long term impact of the impairment." *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 858 (9th Cir. 2009) (internal quotations omitted).

*Asexuality*. Ms. Jones' self-identification as asexual does not qualify as a disability. Neither the District nor the Court could locate any reported cases recognizing asexuality as a disability, nor has Ms. Jones cited any such cases in her response brief. Merriam-Webster's Online Dictionary defines "asexual," in relevant part, as "not having sexual feelings toward others: not experiencing sexual desire or attraction." *Asexual*, merriam-webster.com, https://www.merriam-webster.com/dictionary/asexuality (last visited Mar. 26, 2025). "[A]sexuality – defined generally as not experiencing sexual attraction – has been called 'the invisible orientation'." Jessica Klein, *Asexuality: The ascent of the 'invisible' sexual orientation*, BBC (May 11, 2021), https://www.bbc.com/worklife/article/20210507-asexuality-the-ascent-of-the-invisible-sexual-orientation. The American Psychiatric Association does not recognize asexuality as a mental health disorder. Although the DSM-5 recognizes "female sexual interest/arousal disorder," it explains: "If a lifelong lack of sexual desire is better explained by one's self-identification as 'asexual,' then a diagnosis of female sexual interest/arousal disorder would not be made." Am. Psych. Ass'n, Diagnostic and Statistical Manual of Mental

---

[5] The District argues that "[a] 'substantial limitation' means the inability to perform the activity, or a significant restriction of the ability to perform the activity as compared to 'the average person in the general population." (Doc. 209 at 6.) This argument is wrong and appears to be based on an outdated version of the relevant regulations. Indeed, the District often relies on authority predating the Americans with Disability Act Amendments Act of 2008, "which significantly expand[ed] the scope of the term 'disability' under the ADA." *Rohr v. Salt River Project Agricultural Imp. and Power Dist.*, 555 F.3d 850, 861 (9th Cir. 2009).

Disorders 434 (5th ed., 2013). Such is the case here. Ms. Jones' self-identification as asexual, it seems, is more akin to a sexual orientation than an impairment. And notably, the ADA expressly excludes other sexual orientations—namely homosexuality and bisexuality—along with "sexual behavior disorders" from the definition of disability. 42 U.S.C. § 12211(a), (b)(1).

Nor does the record contain evidence that Ms. Jones' asexual orientation substantially limits a major life activity. There is no evidence that any medical provider diagnosed Ms. Jones with any impairment related to her asexual orientation. When asked during her deposition whether she believes her "asexuality is a mental impairment," Ms. Jones replied "No." (Doc. 209-2 at 70.) Although she alleged in her FAC that her asexual orientation "impair[s] her essential functions of reproduction" (Doc. 11 ¶ 5(D)(2)), Ms. Jones testified that she has "no idea" whether she is medically capable of bearing children, and that no medical provider has told her that she is impaired in her ability to do so. (Doc. 209-2 at 71.) What's more, in her response brief, Ms. Jones does not argue that her asexual orientation is an impairment or disability. Accordingly, the Court concludes that Ms. Jones' disability discrimination claims fail as a matter of law to the extent they are based on her asexual orientation because there is no legal or factual support for the proposition that asexual orientation is an impairment, let alone a disability.

*ADHD*. There is no dispute that Ms. Jones has been diagnosed with ADHD and that ADHD is a mental impairment. (Doc. 261-1 at 98, 102.) The District, however, argues there is insufficient evidence that Ms. Jones' ADHD substantially limits a major life activity. (Doc. 209 at 7.) The Court disagrees. Ms. Jones alleges that her ADHD impairs her ability to work and concentrate, both of which are major life activities. 42 U.S.C. § 12102(2)(A). She elaborated during her deposition that, because of her ADHD, she has had "a hard time with technology" ever since she was a child. (Doc. 209-2 at 73.) For example, she "can barely" turn on an iPad and had "a really hard time writing lesson plans and using the technology," such as a new District software program called "Canvas." (*Id.* at 73, 97.) Ms. Jones submits progress notes from medical providers confirming her difficulties with

concentration and attention. (Doc. 261-1 at 46, 48, 98.) One of her medical providers also completed an ADA Accommodation Form on her behalf, in which the provider opined that Ms. Jones was substantially limited in her ability to use technology and to cope with abrupt changes in her job or workplace. (*Id.* at 102.) And notably, in response to Ms. Jones' accommodation request, the District's HR Coordinator determined that "[t]he medical condition noted in [Ms. Jones'] physician's form, qualifies as a disability[.]" (*Id.* at 43.) The Court finds that Ms. Jones has proffered sufficient evidence to create a genuine issue of material fact regarding whether her ADHD substantially limits her ability to concentrate and work.

### 2.  Failure to Accommodate

Discrimination under the ADA includes an employer's failure to reasonably accommodate an employee's disability. *See* 42 U.S.C. § 12112(b)(5)(A); *Dunlap v. Liberty Nat. Prods, Inc.*, 878 F.3d 794, 799 (9th Cir. 2017).

> Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations that will enable the employee to perform her job duties.

*Dunlap*, 878 F.3d at 799 (internal quotations and citation omitted). "The interactive process requires *both* the employer *and* the employee to engage in good faith in order to clarify what the individual needs and identify the appropriate accommodation." *Goos v. Shell Oil Co.*, 451 F. App'x 700, 702 (9th Cir. 2011) (internal quotations and citation omitted, emphasis in original).

Reasonable accommodations may include:

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B). "Whether an accommodation is reasonable depends on the

individual circumstances of each case, and requires a fact-specific, individualized analysis of the disabled individual's circumstances and the potential accommodations." *Dunlap*, 878 F.3d at 799 (internal quotations, citation, and alterations omitted). An employer is not obligated to "provide an employee the accommodation [s]he requests or prefers, the employer need only provide some reasonable accommodation." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002).

The District argues that there is insufficient evidence that Ms. Jones required any accommodations for her ADHD. (Doc. 209 at 9.) The Court disagrees. The District points to a positive review of Ms. Jones' teaching performance as evidence that Ms. Jones was capable of performing the essential functions of her job without accommodations. (Doc. 209-7 at 37.) The District also places great weight on the ADA Accommodation Form completed by one of Ms. Jones' medical providers. That form asked whether Ms. Jones is unable to perform any of the essential functions of her job, and the medical provider responded "Not applicable." (*Id.* at 23.) But there is evidence on the other side of the ledger. That same medical provider opined that, due to her ADHD, Ms. Jones was limited in her ability to adjust to "abrupt changes in [her] job or workplace," and to engage with technology. (*Id.*) Ms. Jones also testified about her struggles with technology, including some of the District's software. (Doc. 209-2 at 73, 97.) This competing evidence is sufficient to create an issue of fact over whether Ms. Jones' ADHD required workplace accommodations.

The District argues, alternatively, that even if Ms. Jones' ADHD was disabling and required accommodations, the evidence so overwhelmingly shows that the District both engaged in the interactive process and offered reasonable accommodations that no reasonable juror could find for Ms. Jones on her failure-to-accommodate claim. On this point, the Court agrees.

The record shows that near the end of the 2020–2021 school year, Ms. Jones submitted a request for accommodations, specifically: "same position, no change in curriculum, support from administration," and "help [with] technology." (Doc. 261-1 at

107.) The record also shows that the District responded by engaging in the interactive process and offering accommodations for the upcoming 2021–2022 school year, including providing Ms. Jones as much notice as practicable of any changes to her work schedule or school assignments, and assigning a mentor to assist her with technology. (*Id.* at 115–125; Docs. 209-2 at 12, 102; 209-3 at 100; 209-4 at 2–3; 209-7 at 44, 46, 55, 57, 63–65, 67, 72; 209-8 at 2, 8, 15–20, 48.) Ms. Jones proffers no evidence that the District did not engage in the interactive process, or that the accommodations it offered were not reasonable. Instead, her complaint appears to be that these accommodations were never implemented. (Doc. 261 at 8–9.) But that is because Ms. Jones was dismissed for misconduct before she could begin work during the 2021–2022 school year (Doc. 209-7 at 13–17, 20), and, as explained in section III(B) of this order, no reasonable jury could conclude that the District terminated Ms. Jones because she requested accommodations or to avoid implementing the accommodations fashioned during the interactive process. For these reasons, the District is entitled to summary judgment on Ms. Jones' failure-to-accommodate claims.

### 3. Termination

To succeed on her unlawful termination claim, Ms. Jones will need to prove that (1) she is disabled within the meaning of the law, (2) she is a qualified individual capable of performing the essential functions of her job, with or without reasonable accommodation, and (3) she was terminated (4) because of her disability. See *Bradley*, 104 F.3d at 270–71. There is sufficient evidence that Ms. Jones' ADHD is a disability within the meaning of the law, the District does not argue that Ms. Jones was unqualified to perform the essential functions of her job, and there is no dispute that Ms. Jones was terminated. The District argues, however, that no reasonable jury could find Ms. Jones was terminated *because of her ADHD* for two reasons.

First, the District argues that it could not have terminated Ms. Jones because of her ADHD because there is insufficient evidence that it knew Ms. Jones' ADHD was disabling. (Doc. 209 at 11.) But the record is replete with evidence that the District knew Ms. Jones had ADHD, that it limited her ability to concentrate, engage with technology, and adjust to

1    abrupt workplace changes, and that the District believed Ms. Jones' ADHD was an

2    impairment that required it to engage in the interactive process. The District's argument

3    that no reasonable jury could charge it with knowledge that Ms. Jones' ADHD was

4    disabling is meritless.

5         Second, the District argues the evidence overwhelmingly establishes that it

6    terminated Ms. Jones for a legitimate, non-discriminatory, and non-pretextual reason—

7    namely, a well-documented pattern of unprofessional conduct and insubordination. (Doc.

8    209 at 11–13.) Ms. Jones does not genuinely dispute that she engaged in the conduct that

9    led to her termination. Instead, she seems to argue that her behavior was a manifestation of

10   her ADHD—which she contends was exacerbated by the trauma and anxiety she

11   experienced after her night out drinking with Ms. Gibson and Ms. Popham—and, therefore,

12   termination because of the misconduct necessarily constitutes termination because of her

13   ADHD. (Doc. 261 at 4, 9.) The District responds that Ms. Jones' explanation for her

14   misconduct is immaterial, and in doing so misleadingly cites a litany of out-of-circuit cases

15   for the proposition that an employer does not run afoul of the ADA by disciplining an

16   employee for misconduct, even if that misconduct arises from the employee's disability.

17   (Docs. 209 at 12–14; 262 at 4.)

18        The District's immateriality argument is plainly wrong under Ninth Circuit law.

19   "With few exceptions, conduct resulting from a disability is considered to be part of the

20   disability, rather than a separate basis for termination."[6]  *Dark v. Curry Cnty.*, 451 F.3d

21   1078, 1084 (9th Cir. 2006) (internal quotations, citation, and alteration omitted); *see also*

22   _____

    [6] These exceptions are misconduct or inadequate performance cased by alcoholism
23   and illegal drug use, and perhaps also egregious criminal conduct. *See Humphrey v.
    Memorial Hospitals Ass'n*, 239 F.3d 1128, 1140 n.18 (9th Cir. 2001). The District does not
24   argue that Ms. Jones' conduct falls into these exceptions. The Ninth Circuit also has
    clarified that violent and credibly threatening behavior, even if attributable to an
25   individual's disability, can render an individual unqualified to perform the essential
    functions of her job because "[a]n essential function of almost every job is the ability to
26   appropriately handle stress and interact with others," and the ADA does not require
    employers to retain employees whose behavior threatens the safety of others. *Mayo v. PCC
27   Structurals, Inc.*, 795 F.3d 941, 944 (9th Cir. 2015). But, again, the District does not argue
    that Ms. Jones' behavior rose to this level or rendered her unqualified to perform the
28   essential functions of her job. Instead, the District waves away Ms. Jones' "assertions about
    what supposedly caused her improper behavior" as "immaterial," based on the District's
    erroneous reliance on contrary authority from other circuits. (Doc. 262 at 4.)

*Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1095 (9th Cir. 2007) ("[I]f the law fails to protect the manifestations of her disability, there is no real protection in the law because it would protect the disabled in name only."); *Maese-Thomason v. Embry-Riddle Aeronautical Univ.*, No. CV-20-08338-PCT-DWL, 2023 WL 5822513, at *20 n.23 (D. Ariz. Sep. 8, 2023) (recognizing the continued validity of the rule from *Dark*); *E.E.O.C. v. Walgreen Co.*, 34 F.Supp.3d 1049, 1056 (N.D. Cal. 2014) ("Under the Ninth Circuit case law, misconduct resulting from a disability has to be considered as part of [the plaintiff's] disability[.]"); *Brown v. City of Salem*, No. 04-1541-HA, 2007 WL 671336, at *6 (D. Or. Feb. 27, 2007) (explaining that under Ninth Circuit law, "it is plain that conduct resulting from the disability is considered to be part of the disability and that termination based on that conduct is unlawful").

The District's reliance on out-of-circuit case law is troubling. The District's briefs contain plenty of citations to Ninth Circuit authority to support *other* of its arguments. Yet for this issue, on which the law of this circuit is less favorable to the District, it fails to cite a single case from within the Ninth Circuit. Instead, the District relies heavily on case law from the Fourth Circuit. But, as the Eleventh Circuit observed not long ago, while "[t]he Fourth Circuit has held that misconduct—even misconduct related to a disability—is not itself a disability and may be a basis for dismissal . . . the Ninth Circuit has held that conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." *Caporicci v. Chipotle Mexican Grill, Inc.*, 729 Fed. App'x 812, 816 n.5 (11th Cir. 2018) (internal quotations and citations omitted). Under the law of *this* circuit, whether Ms. Jones' misconduct was caused by her ADHD is material.

The problem, however, is that Ms. Jones has not proffered sufficient evidence that the misconduct for which she was terminated was caused by her ADHD. Ms. Jones relies on a letter from her psychologist stating:

> We . . . examined the possibility that your [ADHD] has contributed to your impulsive approach to seeking resolution to the problems, specifically by repeatedly engaging in email as a method of asking for resolution and clarification from others involved. It seems that since you did not feel you were being heard and no resolution was being reached you continued

> with emailing with the hope that you would ultimately be able to reach a conclusion to the situation that everyone involved would accept. These behaviors are consistent with your longstanding diagnosis of [ADHD].

(Doc. 262-1 at 142.)[7] But the Ninth Circuit has held that a physician's affidavit stating certain behaviors fell with the "array of symptoms" of a disability was insufficient to create a genuine issue of fact as to whether an employee's discipline for such behavior was discriminatory. *See Alamillo v. BNSF Railway Co.*, 869 F.3d 916, 921 (9th Cir. 2017). Even more on point, the Ninth Circuit recently explained in *Adams v. County of Maricopa*:

> We can no sooner conclude that a report from an evaluating psychiatrist stating that bipolar disorder is "consistent with ... outbursts" creates a triable issue as to whether [the plaintiff's] fifteen years of misconduct were disability-related. Although [plaintiff] claims she "periodically acted out" because of her disabilities, she has not addressed any of the May 2003 to January 2018 Code of Conduct violations, much less explained how those behaviors resulted from her disability.

No. 20-17299, 2022 WL 42472, at *2 (9th Cir. 2022). These authorities foreclose Ms. Jones' reliance on her psychiatrist's letter to establish the requisite causal link between her ADHD and the totality of the misconduct for which she was terminated. Accordingly, the Court grants summary judgment in favor of the District on Ms. Jones' unlawful termination claim because no reasonable jury could conclude that the District terminated Ms. Jones because of her ADHD.

### 4. Hostile Work Environment

Ms. Jones also claims that she was subjected to a hostile work environment because of her ADHD. Though other circuits have recognized that hostile work environment claims are cognizable under the ADA, *see Ford v. Marion Cnty. Sheriff's Office*, 942 F.3d 839, 852 (7th Cir. 2019) (surveying cases), the Ninth Circuit has only ever assumed that such a claim exists, *see Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir. 2003); *Denning v. Cty. of Washoe*, 799 F. App'x 547 (9th Cir. 2020); *Mulligan v. Lipnic*, 734 F. App'x 397,

---

[7] The District objects that this letter is unauthenticated and hearsay. (Doc. 262 at 10.) But "the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *F.D.I.C. v. New Hampshire Ins. Co.*, 953 F.2d 478, 485 (9th Cir. 1991) (internal quotation and citation omitted).

400 (9th Cir. 2018). If such a claim exists, it would require proof of harassment "sufficiently severe or pervasive to alter the terms and conditions of . . . employment and create an abusive work environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* at 787. The Supreme Court has described this standard as "demanding to ensure that" statutes like the ADA "do not become a 'general civility code.'" *Id.* The Ninth Circuit has affirmed the dismissal of ADA hostile work environment claims predicated on isolated instances of mistreatment. *See, e.g., Garity v. APWU Nat'l. Labor Org.*, 655 Fed. App'x 523, 524 (9th Cir 2016); *Denning*, 799 Fed. App'x. at 547–58.

Ms. Jones has not proffered sufficient evidence to permit a reasonable jury to find severe and pervasive workplace harassment based on her ADHD. According to Ms. Jones, Ms. Gibson once remarked that Ms. Jones might need a "one on one" aide to assist with technology (Doc. 209-2 at 194), once said that Ms. Jones had "lost her mind," was critical when Ms. Jones was unable to repair an item at the school, once commented that she was going to help Ms. Jones "get a Xanax to calm down," and once said Ms. Jones was "fucking crazy." (Doc. 209-2 at 121–22, 194.) She also claims that Mr. Penca once "made fun of [her] for being ADHD and said [she] was not ADHD," though she does not elaborate further. (*Id.* at 124.) But "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 788. Even if Ms. Jones subjectively found Ms. Gibson's and Mr. Penca's comments offensive, no reasonable jury could find that these isolated comments were so severe and pervasive as to objectively alter the conditions of Ms. Jones' employment.[8]

---

[8] In her response brief, Ms. Jones focuses exclusively on what she characterizes as a "cover-up" of the sexual assault she alleges occurred during her night out drinking with Ms. Popham and Ms. Gibson in September 2020. (Doc. 262 at 12–13.) But the claim Ms. Jones brought in this lawsuit is about *disability-based* harassment, not about *sexual* harassment. Ms. Jones directs the Court to no evidence demonstrating severe, extreme, and pervasive harassment based on her ADHD.

1

**B. Retaliation**

2   Finally, Ms. Jones claims that she was terminated in retaliation for requesting

3 reasonable accommodations for her ADHD. No reasonable jury could find for Ms. Jones

4 on this claim. As detailed above, the evidence shows that the District responded to Ms.

5 Jones' April 26, 2021 request for reasonable accommodations by engaging in the

6 interactive process and offering numerous reasonable and responsive accommodations for

7 Ms. Jones' ADHD, including advance notice of any workplace reassignments and

8 resources to assist her with technology. The evidence also shows that the District

9 terminated Ms. Jones because it concluded, after a due process hearing before an

10 independent hearing officer, that Ms. Jones' behavior violated numerous District policies.

11 There is no genuine question of fact as to whether Ms. Jones was terminated because of

12 behavior attributable to her ADHD, and the Court finds no evidence that Ms. Jones' request

13 for reasonable accommodations factored into the District's decision to terminate her.

14   **IT IS ORDERED** that Ms. Jones' motion for leave to file a sur-reply (Doc. 266) is

15 **DENIED**.

16   **IT IS FURTHER ORDERED** that the District's motion for summary judgment

17 (Doc. 209) is **GRANTED**. The Clerk of the Court shall deny any remaining motions as

18 moot, enter judgment accordingly, and terminate this case.

19   **IT IS FURTHER ORDERED** that, within **14 days** of the date of this order, counsel

20 for the District shall submit a written explanation (limited to 5 pages) for his misleading

21 citations to and reliance on outdated regulations and out-of-circuit caselaw that is contrary

22 to the law of this circuit. (*See* Docs. 209 at 6, 13; 262 at 4.)

23   Dated this 1st day of April, 2025.

24

25

26

27   Douglas L. Rayes
     Senior United States District Judge

28